**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALBERTO
MARCHAND-MARTINEZ,

Defendant-Appellant.

No. 07-2135
(D.C. No. CR-06-2229)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Defendant Alberto Marchand-Martinez was convicted after a jury trial of

one count of conspiracy to possess with intent to distribute 100 kilograms and

more of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, and one

count of possession with intent to distribute 100 kilograms and more of

marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

He had moved for a judgment of acquittal at the close of the government's case, but the district court denied the motion and subsequently sentenced him to sixty-three months on each count, with the sentences to run concurrently. Defendant appeals from his convictions, arguing that the evidence was insufficient to support the verdict. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## Summary of the Evidence Presented at Trial

In the early morning hours of July 21, 2006, Border Patrol agents stopped a blue van with Mexican license plates at a fixed border checkpoint in New Mexico. The van was being driven by Pedro Nauriza-Uribe, defendant was in the front passenger seat, and five other people were riding on top of a compartment that had been built into the cargo area of the van. Nauriza told an agent that he was traveling to Oklahoma to purchase cars and take them back to Mexico.

While one Border Patrol agent conducted an immigration inspection of the passengers, another agent conducted an inspection of the van with a narcotics dog. The dog alerted, and agents ultimately discovered 129 bundles of marijuana in the van with a net weight of 282.5 kilograms and worth from half a million to a million dollars.

An agent of the Drug Enforcement Administration (DEA) interviewed defendant after his arrest. Defendant told him that the group was traveling to

Oklahoma City to buy cars at a police auction and deliver them to Juarez, Mexico. Defendant said that he was in charge of the group and that his boss, "Betote," had given him $1200 to pay the group's travel expenses. Defendant said that he used a Motorola cell phone the agent found in the van to communicate with his boss during the trip. Agents also found an insurance certificate for the van. It showed the license plate number for the van, a VIN number matching the van's VIN number except for the last three digits, defendant's home address and age, and was signed "Alberto Machado." Agents compared the certificate to defendant's Mexican voter registration card, which showed the same address, but one DEA agent later came to believe that it was not defendant's signature on the certificate. A check on the license plate for the van determined that it was not registered to anyone, which was said to be very unusual.

A DEA agent testified at trial that the owner of such a high quantity, high-value load of marijuana would not have entrusted it to a first-time transporter, but would have met with the transporters to give them money, travel directions, and instructions. Nauriza testified that he met defendant in early 2006. He said that defendant and a man named Alberto Perez hired him to transport cars from Oklahoma City. Nauriza understood that Perez owned the cars and was the boss, and that defendant was the manager. Nauriza had made approximately ten trips to Oklahoma City with defendant before the July 2006 trip. He said that usually seven people went together in one of three vans, each

with a built-in platform in the back instead of rear seats. Nauriza said he was told that the vans had platforms so that tools could be stored under them and the drivers could sleep on top of them.

Nauriza said that on July 20, 2006, defendant called to tell him they were leaving from Perez's house at 9:00 p.m. When Nauriza arrived there, a man named Hector told him that the white van they had planned to take was not running well and they would take the blue van instead. Nauriza found it strange that Hector got the blue van out of the garage because the vans were usually parked on the street. He also was concerned that there could be something illegal in a trash bag he saw partially hidden under some tools and tires because he had never seen such a bag on any of the previous trips.

After Nauriza was arrested, he was placed in a cell next to defendant's cell. Defendant slipped several letters to Nauriza under the cell door, setting out a fabricated story for them to use. Defendant also asked Nauriza in these letters to take all of the blame for the drugs and not to turn in a man called "Tocayo," which Nauriza took to mean Alberto Perez because "Tocayo" in Spanish means another person with the same name. Nauriza saved the letters and later gave them to his attorney because he did not intend to take the blame for an offense he had not committed.

Issue on Appeal and Discussion

Defendant argues that the evidence was insufficient to support his conviction for conspiracy or possession. He asserts that his presence in proximity to illicit activity was insufficient, citing *United States v. McMahon*, 562 F.2d 1192, 1196 (10th Cir. 1977).

"We review the record for sufficiency of the evidence de novo." *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[W]e evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *United States v. Johnson*, 130 F.3d 1420, 1428 (10th Cir. 1997) (quotations and alteration omitted).

Based on our review of the record in light of the applicable standards of review set out above, we conclude that the evidence was more than sufficient to support defendant's convictions.

The judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge

-5-